44 A.3d 3

**MESIVTAH EITZ CHAIM OF BOBOV, INC.**, Appellant

v.

**PIKE COUNTY BOARD OF ASSESSMENT APPEALS**, Appellee.

**Delaware Valley School District and Delaware Township, Intervenors.**

Supreme Court of Pennsylvania.

Argued Sept. 13, 2011.

Decided April 26, 2012.

464

Jonathan F. Bloom, Thomas Walter Dymek, Karl Stewart Myers, Stradley, Ronon, Stevens & Young, LLP, Philadelphia, for Amicus Curiae, Senators Joseph Scarnati, III; Dominic Pileggi; Jay Costa (Elected Leaders of the Senate of PA).

Lawrence B. Abrams III, Stephanie Erika DiVittore, Rhoads & Sinon, L.L.P., Harrisburg, for Intervenor, Delaware Valley School District.

Anthony J. Magnotta, Hawley, for Intervenor, Delaware Township.

Howard J. Bashman, Willow Grove, for Mesivtah Eitz Chaim of Bobov Inc.

Philip H. Lebowitz, David Edwin Loder, Duane Morris, L.L.P., Melissa Sobel Snyder, Philadelphia, for Appellant Amicus Curiae, Hospital & Healthsystem Association of Pennsylvania.

Stacey Beecher, Milford, Pike County Board of Assessment and Appeals.

Stuard Lee Knade, PA School Boards Association, Inc., for Appellee Amicus Curiae, PA School Board Association.

Robert L. Knupp, Knupp Law Offices, LLC, Anthony T. McBeth, Harrisburg, for Appellee Amicus Curiae, the County Commissioners Association of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

EAKIN, Justice.

Appellant, Mesivtah Eitz Chaim of Bobov, Inc., appeals the Commonwealth Court ruling, asking that we find it is an "institution [ ] of purely public charity" under Article VIII,

§ 2(a)(v) of the Pennsylvania Constitution, entitled to exemption from real estate taxes. We allowed appeal to determine if we must defer to the General Assembly's statutory definition of that term. We affirm, holding our prior jurisprudence sets the constitutional minimum for exemption from taxes; the legislation may codify what is intended to be exempted, but it cannot lessen the constitutional minimums by broadening the definition of "purely public charity" in the statute.

Appellant is a not-for-profit religious entity related to the Bobov Orthodox Jewish community in Brooklyn, organized pursuant to 26 U.S.C. § 501(c)(3). It operates a summer camp in Pike County. The camp consists primarily of lectures and classes on the Orthodox Jewish faith, and provides food and recreational activities for its students. The camp is funded by donations, rental income from a building in Brooklyn, and tuition from its students. The camp provides financial assistance to some students, which come from New York, Canada, England, and Israel. While the facilities are also open to the public, appellant is unaware of any Pike County resident utilizing these amenities.

Appellant sought a property tax exemption as a "purely public charity." "The General Assembly may by law exempt from taxation: ... Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution." Pa. Const. art. VIII, § 2(a)(v). We have held an "institution of purely public charity":

(a) Advances a charitable purpose;

(b) Donates or renders gratuitously a substantial portion of its services;

(c) Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d) Relieves the government of some of its burden; and

(e) Operates entirely free from private profit motive.

*Hospital Utilization Project v. Commonwealth*, 507 Pa. 1, 487 A.2d 1306, 1317 (1985) (*HUP*). This standard, which we refer

to as the *"HUP* test," is the "test for determining whether an entity qualifies as an 'institution of purely public charity' under the Pennsylvania Constitution." *Alliance Home of Carlisle v. Board of Assessment Appeals,* 591 Pa. 436, 919 A.2d 206, 216 (2007).

The Pike County Board of Assessment denied appellant's exemption request. Appellant appealed to the trial court, which held a *de novo* hearing. Finding appellant was not a "purely public charity," the court denied the exemption. The Commonwealth Court, applying the *HUP* test, affirmed the trial court. *Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals,* No. 2343 CD 2008, unpublished memorandum at 11, 2009 WL 5185191 (Pa. Cmwlth. filed December 29, 2009). The Commonwealth Court reasoned occasional use of appellant's recreational and dining facilities by Pike County residents was insufficient to prove appellant relieved Pike County's government of some of its burden. *Id.,* at 10.[1]

Appellant argued that it need not satisfy the *HUP* test, since the General Assembly enacted the Institutions of Purely Public Charity Act, 10 P.S. §§ 371–385 (Act 55), after the *HUP* case was decided. The Act seeks to define the element of "burden relieving" more expansively than the *HUP* test, and provides, in pertinent part:

(f) GOVERNMENT SERVICE.—The institution must relieve the government of some of its burden. This criterion is satisfied if the institution meets any one of the following:

(1) Provides a service to the public that the government would otherwise be obliged to fund or to provide directly or indirectly or to assure that a similar institution exists to provide the service.

---

1. This is not the precise measure, as a charity can relieve the government of some of its burden, even if the beneficiaries are not in the jurisdiction from which it seeks a tax exemption. *See West Indies Mission Appeal,* 387 Pa. 534, 128 A.2d 773, 781 (1957) (holding charity can be entitled to exemption when its beneficiaries are outside Pennsylvania). However, this issue is outside the scope of our grant of allocatur.

(2) Provides services in furtherance of its charitable purpose which are either the responsibility of the government by law or which historically have been assumed or offered or funded by the government.

(3) Receives on a regular basis payments for services rendered under a government program if the payments are less than the full costs incurred by the institution, as determined by generally accepted accounting principles.

(4) Provides a service to the public which directly or indirectly reduces dependence on government programs or relieves or lessens the burden borne by government for the advancement of social, moral, educational or physical objectives.

(5) Advances or promotes religion and is owned and operated by a corporation or other entity as a religious ministry and otherwise satisfies the criteria set forth in section 5.

10 P.S. § 375(f)(1)-(5).

The Commonwealth Court rejected this argument. *Mesivtah,* at 10–11 (citing *Alliance Home,* at 222). We granted allocatur to determine:

Whether the Pennsylvania Legislature's enactment of criteria in Act 55 for determining if an organization qualifies as a "purely public charity" under Pennsylvania's Constitution is deserving of deference in deciding whether an organization qualifies as a "purely public charity" under Pennsylvania's Constitution, or has the test provided in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 487 A.2d 1306 (Pa.1985), occupied the constitutional field, leaving no room for legislative influence and input?

*Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals,* 608 Pa. 568, 13 A.3d 463, 463 (2011) (*per curiam* ). As this is a purely legal question, "our standard of review is *de novo,* and our scope of review is plenary." *Buckwalter v. Borough of Phoenixville,* 603 Pa. 534, 985 A.2d 728, 730 (2009) (citing *In re Milton Hershey School,* 590 Pa. 35, 911 A.2d 1258, 1261 (2006)). Further, "[i]n constitutional interpretation, our ultimate touchstone is the actual language

of the constitution itself." *Id.* (quoting *Jubelirer v. Rendell,* 598 Pa. 16, 953 A.2d 514, 528 (2008)) (internal quotations omitted).

Appellant believes it meets the definition under Act 55, and that the Commonwealth Court erred in requiring it to meet the *HUP* test. It argues Article VIII, § 2(a)(v) authorizes the General Assembly to define what qualifies as a purely public charity. It claims the *HUP* test was a stopgap measure displaced by the General Assembly's definition, suggesting that had Act 55 predated *HUP*, we would have deferred to the Legislature's definition. Given the General Assembly's broad power over taxation, appellant urges us to presume Act 55 is constitutional, as it shows a high degree of deference to the *HUP* test and serves worthy purposes.

Appellee, Pike County Board of Assessment Appeals, traces the development of our jurisprudence regarding "institutions of purely public charity," up to our decision in *HUP*, and contends we have consistently applied the *HUP* test, even after the enactment of Act 55. It further argues the separation of powers doctrine prohibits the General Assembly from intruding upon the judiciary's function of interpreting and defining the Constitution.

Intervenor School District echoes this and observes that the goals of Act 55 may be laudable, but noble purposes are not a basis for upholding otherwise unconstitutional legislation. Intervenor Delaware Township[2] argues the *HUP* test occupies the constitutional field and contends a party seeking an exemption must satisfy both the *HUP* test and Act 55. The Township contends appellant's camp does not relieve it of any burden, as it must ensure the health, safety, and welfare of the campers, while the public gets minimal access to the camp's recreational facilities.

---

2. In addition, the Hospital and Healthsystem Association of Pennsylvania and the Elected Leaders of the Senate of the Commonwealth of Pennsylvania filed *amici* briefs in support of appellant. The Pennsylvania School Board Association and County Commissioners Association of Pennsylvania filed *amici* briefs in support of appellee.

Appellant acknowledges this Court has the last say as to what constitutes an "institution of purely public charity," but encourages us to allow this meaning to evolve as the General Assembly sees fit, instead of being fixed by the *HUP* test. It contends that as a religious organization, appellant relieves the government of some of its burden by creating greater moral and social awareness in society.

The question is whether the General Assembly may, by statute, influence the definition of the constitutional phrase "purely public charity." While the General Assembly necessarily must attempt to interpret the Constitution in carrying out its duties, the judiciary is not bound to the "legislative judgment concerning the proper interpretation of constitutional terms." *Alliance Home*, at 223 n. 9 (quoting *Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918, 948 (2006)). The General Assembly cannot displace our interpretation of the Constitution because "the ultimate power and authority to interpret the Pennsylvania Constitution rests with the Judiciary, and in particular with this Court." *Stilp*, at 948; *see also Pottstown School District v. Hill School*, 786 A.2d 312, 319 (Pa.Cmwlth.2001) (*en banc*) ("Nor can the General Assembly alter the Constitution by purporting to define its terms in a manner inconsistent with judicial construction; interpretation of the Constitution is the province of the courts."); THE FEDERALIST No. 78 (Alexander Hamilton) ("The interpretation of the laws is the proper and peculiar province of the courts.").

Article VIII, § 1 provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws." Pa. Const. art. VIII, § 1. "Article VIII, Section 2(a)(v) thus allows for a legislatively-approved exception to the general rule that all real estate in Pennsylvania is to be taxed uniformly upon the same class of subjects." *Alliance Home*, at 214. The relevant exception of Article VIII, § 2(a)(v) is limited to "institutions of purely public charity." Pa. Const. art. VIII, § 2(a)(v). While the

Pennsylvania Constitution permits exempting of purely public charities, it does not require the General Assembly to do so.

Neither appellant nor any *amici* specifically identify any part of the Constitution which grants non-reviewable authority to the General Assembly to determine what does or does not constitute an "institution of purely public charity." The legislature may certainly determine what exemptions it chooses to grant, but only within the boundaries of the Constitution—the constitutional identification of those boundaries remains the unique province of the judiciary.

Prior to the 1874 Constitution, " 'the legislature, by special act, relieved from taxation just what property it saw fit, whether the property was charitable, religious, or even devoted solely to purposes of corporate or private gain. The legislative habit had grown into a great abuse.' " *Alliance Home*, at 215 (quoting *White v. Smith*, 189 Pa. 222, 42 A. 125, 125 (1899)). The people of this Commonwealth, in 1874 and 1968, voted for Constitutions limiting the authority of the General Assembly to grant such exemptions. The very purpose of Article VIII, § 2 "was not so much to limit the scope of exemptions to charities as to destroy the obnoxious feature of favoritism by special legislation." *Donohugh's Appeal*, 86 Pa. 306, 312 (1878). Nonetheless, "the provision does go a step farther, and put a limit upon the legislative power to exempt which was before unlimited." *Id.*

Accordingly, Article VIII, § 2 was designed not to grant, but limit, legislative authority to create tax exemptions. To eliminate judicial review of the constitutionality of the General Assembly's creations would defeat this purpose. The General Assembly could, by statute, define any entity whatsoever as an "institution of purely public charity" entitled to exemption from taxes, returning to the practice the constitutional provision was designed to eliminate. It could create classifications of charities so oblique it would turn § 2 into an exception that swallows the uniformity requirement of Article VIII, § 1. Such a counterintuitive outcome would be contrary to Article VIII,

§ 2's purpose of limiting the General Assembly's ability to grant tax exemptions.[3]

Appellant contends we should defer to Act 55 because it was enacted for laudable purposes, including reducing "confusion and confrontation among traditionally tax-exempt institutions and political subdivisions," 10 P.S. § 372(a)(4), and establishing "a fair and equitable system of property tax assessment." *Id.,* § 372(a)(6). Appellant also claims deferring to the General Assembly will offer more flexibility than the *HUP* test, and suggests we would have deferred to Act 55 had it predated that decision.

■ Good intentions do not excuse non-compliance with the Constitution, *see Stilp,* at 944 ("[T]he legislative motivation is not of primary importance."), and our courts will apply the *HUP* test in light of evolving circumstances. *See G.D.L. Plaza Corp. v. Council Rock School District,* 515 Pa. 54, 526 A.2d 1173, 1175 (1987) (quoting *Presbyterian Homes Tax Exemption Case,* 428 Pa. 145, 236 A.2d 776, 778 (1968)) (" '[P]rior cases have limited value as precedent,' because of the continually changing nature of the concept of charity."). While the *HUP* test was created in the absence of legislative guidance, it was not pulled out of thin air. *See HUP,* at 1318 ("[W]e adhere to the principles established by a long line of prior case law.") (citation omitted).

Relevant here, we have long held a "purely public charity" must relieve the government of some of its burden. *See, e.g., Ogontz School Tax Exemption Case,* 361 Pa. 284, 65 A.2d 150, 153 (1949) (finding school ineligible for tax exemption because it did not relieve government of any burden); *Young Men's Christian Association of Germantown v. Philadelphia,* 323 Pa. 401, 187 A. 204, 210 (1936) (noting charity "relieves the government of part of [its] burden"), *disapproved on other grounds, West Allegheny Hospital v. Board of Property Assessment,* 500 Pa. 236, 455 A.2d 1170, 1173 (1982). The cases

3. Appellant suggests we need not worry about such abuses anymore. However, the constitutional limitations on governmental power exist to protect against potential abuse. One does not throw out the raincoat just because the weather is nice today.

thus defined "purely public charity" before the explanation in *HUP*, and a preexisting statute would not have altered this constitutional definition.

In the end, to receive an exemption without violating the Constitution, the party must meet the definition of "purely public charity" as measured by the test in *HUP*. If it does so, it may qualify for exemption if it meets the statute's requirements. Act 55, however, cannot excuse the constitutional minimum—if you do not qualify under the *HUP* test, you never get to the statute. We have repeatedly held " '[a]n entity seeking a statutory exemption for [sic] taxation must first establish that it is a 'purely public charity' under Article VIII, Section 2 of the Pennsylvania Constitution before the question of whether that entity meets the qualifications of a statutory exemption can be reached.' " *Alliance Home*, at 222 (quoting *Community Options v. Board of Property Assessment*, 571 Pa. 672, 813 A.2d 680, 683 (2002)); *see also HUP*, at 1312 ("Because we reach the conclusion ... that *HUP* is not a 'purely public charity' within the meaning of the Constitution, we do not reach whether *HUP* qualifies [for a tax exemption] under the Pennsylvania Code definition."). We see no reason to alter this standard.

The Commonwealth Court held appellant did not satisfy the *HUP* test, and our grant of allocatur was limited to its continued viability in light of Act 55. As such, we will not review the Commonwealth Court's application thereof, nor the relevance or constitutionality of Act 55.

The order of the Commonwealth Court is affirmed.

Jurisdiction relinquished.

Justices BAER, TODD and McCAFFERY join the opinion.

Justice SAYLOR files a dissenting opinion in which Chief Justice CASTILLE and Justice ORIE MELVIN join.

SAYLOR, Justice, dissenting.

This case presents the issue left open in *Alliance Home of Carlisle, PA v. Board of Assessment Appeals*, 591 Pa. 436,

463, 919 A.2d 206, 222–23 (2007), where this Court noted that a constitutional problem with Act 55 might arise when that statute and the test set forth in *Hospital Utilization Project v. Commonwealth,* 507 Pa. 1, 21–22, 487 A.2d 1306, 1317 (1985) (*"HUP "*), lead to different results. On this question, I agree with the majority that the relevant terms of Act 55 are in tension with the previous constitutional interpretation of Article VIII, Section 2(a)(v) set forth in *HUP. See* Majority Opinion, at 471–72, 44 A.3d at 8–9. Specifically, permitting a charitable association to satisfy the requirement that its actions relieve the government of some burden, *see HUP,* 507 Pa. at 21–22, 487 A.2d at 1317, by simply being an organization that "[a]dvances or promotes religion and is owned and operated by a corporation or other entity as a religious ministry," 10 P.S. § 375(f)(5), is not consistent with prior caselaw applying this prong of the *HUP* test, both before and after this Court announced the definitive constitutional test in that case. *See, e.g., HUP,* 507 Pa. at 23–24, 487 A.2d at 1318 (citing numerous cases for the proposition that its holding "adhere[s] to the principles established by a long line of prior case law"); *see also Ogontz School Tax Exemption Case,* 361 Pa. 284, 291–92, 65 A.2d, 150, 153 (1949) ("Any institution which by its charitable activities relieves the government of part of this burden is conferring a pecuniary benefit upon the body politic, and in receiving exemption from taxation it is merely being given a 'quid pro quo' for its services in providing something which otherwise the government would have to provide.") (quoting *Young Men's Christian Ass'n of Germantown v. City of Philadelphia,* 323 Pa. 401, 187 A. 204 (1936)).

However, I do not believe that this conclusion ends the inquiry. Rather, this appeal requires us to address the appropriate roles of the Legislature and the Court in defining the term "purely public charity." *See* Pa. Const. art. VIII, § 2(a)(v). In this regard, although I agree with the majority that the judiciary retains the power to interpret the Constitution in the first instance, *see* Majority Opinion, at 469, 44 A.3d at 7 (citing *Stilp v. Commonwealth,* 588 Pa. 539, 589, 905 A.2d 918, 948 (2006)), I do not believe that this eliminates the

Legislature's role entirely. Instead, the Legislature's policy decisions, such as those underlying Act 55, provide the necessary impetus for this Court to review such assessments in light of the ongoing, changeable nature of public policies and their relation to baseline constitutional principles to which the Legislature must adhere. *Cf. G.D.L. Plaza Corp. v. Council Rock Sch. Dist.*, 515 Pa. 54, 59–60, 526 A.2d 1173, 1175 (1987) ("[P]rior cases have limited value as precedent because of the continually changing nature of the concept of charity and the many variable circumstances of time, place, and purpose.") (internal citations omitted). Indeed, as the majority acknowledges, the *HUP* test itself is subject to change, *see* Majority Opinion, at 471–72, 44 A.3d at 8–9, but the majority does not explain how such change may come about. In my view, the catalyst for such alterations in the constitutional standards can only be found in a function served by the Legislature— monitoring policies as they shift with societal changes. In a largely policy-oriented area such as the present context, and where this Court is interpreting a constitutional provision that directly grants certain powers to the General Assembly, I find legislative determinations particularly important. *See Appeal of Donohugh*, 86 Pa. 306, 1878 WL 13276, at *4 (Pa.1878) (defining the term "purely public charity," and stating that, "[e]specially is great respect due to the legislative construction of a constitutional provision where, as in the present case, it is a question, not of private right, but of public policy").

Therefore, I would uphold the General Assembly's reasonable policy determination that Act 55, with its broader definition of the ways in which an institution can demonstrate that it relieves the government of some of its burden, *see* 10 P.S. § 375(f), serves to advance the morals and ethics of society, so long as the provision at issue is otherwise consistent with the Constitution.[1] In this regard, the direction taken by the

1. I express no opinion as to whether Act 55's inclusion of religious institutions as a means of relieving the government of some of its burden violates the religion clauses of the federal and state constitutions. *See* U.S. Const. amend. I; Pa. Const. art. I, § 3. Although Appellee does set forth some argument on this issue, *see* Brief of

Legislature fosters behavior that reinforces the ultimate goal of the Constitutional provision at issue: encouraging community responsibility and acts of charity that benefit the public good. *Cf. HUP*, 507 Pa. at 18, 487 A.2d at 1315 ("The word 'charitable,' in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood 'to refer to something done or given for the benefit of our fellows or the public.'") (quoting *Hill School Tax Exemption Case*, 370 Pa. 21, 25, 87 A.2d 259, 262 (1952)).

Notably, this Court has consistently emphasized the proper allocation of roles between the legislative and judicial branches of the Commonwealth's government: the Legislature sets policy; the Court ensures that such legislation, and its enforcement, conform to constitutional mandates.[2] I believe that the Legislature remained true to its role under the present circumstances, with appropriate deference to this Court's constitutional rulings, by requiring organizations seeking exemptions under Act 55 to demonstrate each prong of the *HUP* test. *See* 10 P.S. § 375(f). Going one step further by specifying additional criteria for each prong does not, in my view, displace this Court's constitutional rulings or the *HUP* test in its entirety. Rather, the General Assembly determined—as a matter of policy—that more refinement was necessary for

Appellee, at 18 n. 3, the question is beyond the scope of the grant of allocatur in this case.

**2.** *See, e.g., Weaver v. Harpster*, 601 Pa. 488, 502, 975 A.2d 555, 563 (2009) ("[T]he power of the courts to declare pronouncements of public policy is sharply restricted[;] ... [r]ather, it is for the legislature to formulate the public policies of the Commonwealth.") (internal citation omitted); *Program Admin. Services, Inc. v. Dauphin Cnty. Gen. Auth.*, 593 Pa. 184, 192, 928 A.2d 1013, 1017–18 (2007) ("[I]t is the Legislature's chief function to set public policy and the courts' role to enforce that policy, subject to constitutional limitations."); *Glenn Johnston, Inc. v. Commonwealth, Dept. of Revenue*, 556 Pa. 22, 30, 726 A.2d 384, 388 (1999) (noting, in the context of applying a different tax exemption, that "[s]uch policy determinations, however, are within the exclusive purview of the legislature, and it would be a gross violation of the separation of powers doctrine for us to intrude into that arena").

efficient, uniform application of that test and enacted legislation to serve that goal. *See Alliance Home,* 591 Pa. at 464, 919 A.2d at 223 ("[T]he General Assembly was concerned with a perceived inconsistent application of eligibility standards for charitable tax exemptions. Act 55 found that the inconsistencies had led to 'confusion and confrontation' among traditionally tax-exempt institutions and political subdivisions to the detriment of the public, a detriment which included the 'unnecessar[y] diver[sion]' of 'charitable and public funds ... from the public good to litigate eligibility for tax-exempt status.' ") (quoting 10 P.S. § 372(b)).

In sum, I agree with *amici,* the Elected Leaders of the Senate of the Commonwealth of Pennsylvania, that Act 55 is "an integrated legal test blending the Judiciary's well-crafted *HUP* test with the wide-ranging policymaking experience of the Legislature." Brief for *Amici Curiae,* Elected Leaders, at 5. Thus, so long as the statute otherwise comports with the Constitution, I would defer to the General Assembly's reasonable policy determination that an organization satisfying the criteria set forth in Act 55 is a purely public charity.

Chief Justice CASTILLE and Justice ORIE MELVIN join this dissenting opinion.