LASH, J.,
The matter before this court is the appeal of appellant, Reading Community Club, (hereinafter “RCC”), from the decision of the Board of assessment appeals of Berks County, Pennsylvania, (hereinafter “Board”), denying RCC an exemption from real estate taxation. RCC claims it is entitled to the exemption as a purely public charity. Trial was held on March 23, 2015. This court enters the following findings of fact:
I. FINDINGS OF FACT
1. Appellant is the Reading Community Club, *251 (hereinafter “RCC”), a non-profit corporation that has been in existence since 1920, but has only been organized under the laws of the Commonwealth of Pennsylvania since 1938.
2. The respondent, Board of Assessment Appeals of Berks County, Pennsylvania, (hereinafter “Board”), with offices in the Berks County Services Center, Third Floor, 633 Court Street, Reading, Berks County, Pennsylvania 19601.
3. Intervenor, Reading School District, maintains offices at 800 Washington Street, Reading, Berks County, Pennsylvania 19601. Reading School District filed its Notice of Intervention on November 14, 2014.
4. RCC owns real estate (hereinafter “property”) located at 403 North 11th Street, Reading, Berks County, Pennsylvania 19604, consisting of approximately .090 acres. The property I.D. Number is 11-5317-61-12-1594.
5. The property is located in the Reading School District.
6. RCC does not lease any part of the property or earn any rental income from the same.
7. RCC enjoys federal tax exemption status pursuant to Section 501(c)(3) of the Internal Revenue Code. 26 U.S.C.A. § 501(c)(3).
8. RCC is a non-profit corporation with a board composed of volunteers committed to the advancement of theater arts. RCC produces approximately four (4) dramas and children’s shows per year.
9. The productions are for the benefit of the general community and for specific targeted groups.
*252 10. As set forth in its by-laws, the purpose of RCC is to “foster, promote, develop and produce dramatic and other theatrical and cultural projects. [RCC] does not contemplate pecuniary gain or profit for itself or its members.”
11. RCC serves the community in several ways, including: (1) providing affordable drama productions for the community, productions that would not otherwise be available to the community other than through out of town travel at a much higher cost; (2) providing educational training for actors and technicians; (3) providing opportunities for local playwrights; and (4) featuring plays geared toward specific ethnic youth to interest them in drama and provide an alternative to street crime.
12. The educational component includes partnering with various school districts in the community to provide an after school theatre club, an activity that the school district would otherwise likely not be providing.
13. RCC also partners with non-profit organizations and agencies for the benefit of the community. For example, RCC partnered with St. Joseph’s Medical Center for a production on cyberbullying, providing free tickets to students who were being bullied. After the drama, members of St. Joseph’s Medical Center were available for a question and answer session with the students.
14. RCC generates revenue from private donations, reasonable annual memberships fees and from ticket and concession sales. In order to be in the production, a person must be a member. However, the membership fees are often waived if the individual cannot afford the fee. Tickets are also often given out at no cost. Volunteers provide time at no compensation.
*253 15. The revenue is first used to pay the outstanding overhead and also to provide a scholarship fund for children endeavoring to take college courses in the theater arts. None of the members or board members receive any compensation. If revenue exceeds expenses, the excess is used for building maintenance. In 2014, RCC operated at a deficit.
16. The property is utilized for productions, rehearsal, storage, and stage building. Storage is for costumes and props. RCC also permits other theatre production companies and agencies to use the property or the costumes or props without any rental fee.
17. On or about August 20, 2014, RCC filed an application for real estate tax exemption for the property.
18. On October 1, 2014, the Board held a hearing to determine whether RCC should be granted a real estate tax exemption for the property.
19. On October 8, 2014, the Board mailed RCC a final notice indicating that the requested real estate tax exemption was denied.
20. Thereafter, on or about November 5, 2014, RCC filed an appeal to the Court of Common Pleas of Berks County.
II. DISCUSSION
RCC claims that it is a purely public charity under Section 8812(a)(3) of the new Consolidated County Assessment Law, 53 Pa. C.S.A. Section 8812(a)(3), which states the following:
(a) General rule. — The following property shall be exempt from all county, city, borough, town, township, *254 road, poor, county institution district and school real estate taxes:...
(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds annexed and necessary for their occupancy and use, founded, endowed and maintained by public or private charity as long as all of the following apply:
(i) The entire revenue derived by the entity is applied to support the entity and to increase the efficiency and facilities of the entity, the repair and the necessary increase of grounds and buildings of the entity and for no other purpose.
(ii) The property of purely public charities is necessary to and actually used for the principal purposes of the institution and not used in such a manner as to compete with commercial enterprise.
The exemption from taxation for institutions of purely public charity has its foundation in the Pennsylvania Constitution. In Article 8, Section 2(a)(v), it states: “The general assembly may by law exempt from taxation:... (v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.” Const. Art. 8, § 2(2)(v).
In the case of Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals, 44 A.3d 3 (Pa. 2012), the Pennsylvania Supreme Court clarified the requirements for an institution seeking a tax exemption as *255 a purely public charity. The court stated that the institution must initially meet the definition of “purely public charity” measured by the test set forth in the case of Hospital Utilization Project v. Commonwealth, 507 Pa. 1, 487 A.2d, 1306, 1317 (1985), a standard commonly referred to as the “HUP test.” That test requires that the institution prove that it: “(a) [ajdvances a charitable purpose; (b) [d]onates or renders gratuitously a substantial portion of its services; (c) [b]enefits a substantial and indefinite class of persons who are legitimate subjects of charity; (d) [rjelieves the government of some of its burden; and (e) [ojperates entirely free from private profit motive.” Mesivtah, 44 A.3d at 5.
If the institution meets the HUP test, it may then qualify for exemption if it meets the requirements imposed by the Institutions of Purely Public Charity Act, (hereinafter “Act 55”), 10 P.S. Section 375. Mesivtah, 44 A.3d at 6. The criteria set forth in Act 55, conceptually similar to the HUP test, are: that the institution advances a charitable purpose, that it operate entirely free from private profit motive, that it donates or renders gratuitously a substantial portion of its services, that it benefits a substantial and indefinite class of persons who are legitimate subjects of charity and that it relieves the government of some of its burden. 10 P.S. § 375(b)(f). The distinctions between the HUP test and Act 55 stem from the different means used to determine whether the various criteria have been met. For the HUP test, the means were established through development of case law while Act 55 is specific, listing the means in the statute.
The Board does not dispute that RCC operates entirely free from private profit motive but does argue that RCC *256 fails to meet any of the other four (4) requirements. Accordingly, this court shall first consider whether the RCC advances a charitable purpose.
As stated in the HUP case, the term “charitable” includes:
[E]very gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical, or social standpoint. In its broadest meaning, it is understood ‘to refer to something done or given for the benefit of our fellows or the public.’ HUP 487 A.2d. at 1315 (citation omitted.)
RCC provides services to the community, which benefit the community, and do “advance a charitable purpose.” In addition to providing entertainment for the general public at a reasonable cost, RCC provides substantial assistance toward the education of students wanting to advance in the theatre arts. The partnership with the school districts is particularly important, given the current budgetary difficulties experienced by school districts, often resulting in termination of activities, including in the area of performing arts. The “cyberbullying” performance is unique in that it provides a method through an entertainment venue for attracting students who need to hear the message where they then can receive instruction through the aid of professionals. Providing an entertainment alternative to disadvantaged minorities also fulfills this purpose.
Likewise, under Act 55 this criterion is met. In Section 375(b), several purposes are fulfilled, including (1) relief of poverty, (2) advancement and provision of education, and (6) accomplishment of a purpose which is recognized *257 as important and beneficial to the public and which advances social, moral or physical objectives.
The next prong of the HUP test is whether RCC “donates or renders gratuitously a substantial portion of its services.” In the case of In Re Appeal of Sewickley Valley YMCA, 774 A.2d 1, 8 (Pa.Cmwlth. 2001), the Pennsylvania Commonwealth Court discusses this criterion in the context of the HUP test, setting forth:
In order to satisfy its burden of demonstrating that it donates or renders gratuitously a substantial portion of its services, an entity must show that it makes a bona fide effort to service those persons who are unable to afford the usual fee. Fellowship Int’l Mission v. Lehigh County Bd. of Assessment Appeals, 690 A.2d 1271 (Pa.Cmwlth.1997). “In other words, it must be shown that it provides services to someone who cannot afford to pay.” Id. at 1274. Whether an institution renders gratuitously a substantial portion of its services should be based on the totality of the circumstances, as the term “substantial” does not imply a magical percentage. HUP [507 Pa. at 19, 487 A.2d at 1315, n. 9.]
According to the testimony, RCC is very liberal in waiving membership fees and providing free tickets to those who cannot afford to purchase tickets. No one is denied access due to an inability to pay. Additionally, substantial time is donated by volunteers.
Act 55 lists several alternate means of meeting this criterion. Applicable here is Section 375(d)(l)(v), which qualifies an institution if it provides for “uncompensated goods or services which in the aggregate are equal to at least five percent of the institution’s costs of providing goods or services.” RCC provided profit and loss *258 statements for the four (4) productions in 2014. The first production, “Almost, Maine”, cost One Thousand Seven Hundred Fifteen Dollars ($1,715.00) to produce. The uncompensated services and goods included One Hundred Fifty Dollars ($150.00) for ten (10) donated tickets and One Thousand Five Hundred Dollars ($1,500.00) for seventeen (17) volunteers working various hours at Five Dollars ($5.00) an hour, resulting in total uncompensated services of One Thousand Six Hundred Fifteen Dollars ($1,615.00). The second production, “Alice in Wonderland, Jr.”, cost Two Thousand Four Hundred Ninety-Five Dollars ($2,495.00) to produce. Uncompensated services include Six Hundred Seventy Dollars ($670.00) in donated tickets and Five Thousand Six Hundred Twenty Dollars ($5,620.00) of volunteer hours at Five Dollars ($5.00) an hour, for a total of Six Thousand Two Hundred Ninety Dollars ($6,290.00). The third production, “Three Viewings”, cost Seven Hundred Ten Dollars ($710.00) to produce. Uncompensated services included tickets at Ninety Dollars ($90.00) and volunteer hours totaling One Thousand Two Hundred Sixty Dollars ($1,260.00), for a total of One Thousand Three Hundred Fifty Dollars ($1,350.00). Finally, the last production, “Kid’s Holiday Cabaret”, cost Seven Hundred Seventy Dollars ($770.00) to produce, with uncompensated services, including tickets, totaling Three Hundred Ten Dollars ($310.00) and voluntary hours totaling One Thousand Eight Hundred Ninety Dollars ($1,890.00), for a total of Twenty-Two Hundred Dollars ($2,200.00).
Clearly, the uncompensated services far exceed the five percent (5%) required by Act 55. This court determines that this prong has been met.
The next prong of the HUP test is that RCC “benefits *259 a substantial and indefinite class of persons who are legitimate subjects of charity.” As stated in the Appeal of Sewickley valley YMCA, 11A A.2d at 11, “[i]n order to qualify as a substantial and indefinite class of persons, the beneficiary of the charity must be the public.” (citation omitted). As such, restrictions limiting availability of the facilities to a defined group or class could be a basis for disallowance. The Pennsylvania Supreme Court in Unionville-Chadds Ford School District v. Chester County Board of Assessment Appeals, 714 A.2d 397, 401 (Pa. 1998), notes that an essential feature of public charity “is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality that gives it its public character,” citing Donohugh’s Appeal, 86 Pa. 306, 313 (1878).
Act 55 defines “legitimate subjects of charity” as “those individuals who are unable to provide themselves with what the institution provides for them.” 10 P.S. Section 375(e)(2). Act 55 defines “substantial and indefinite class of persons” as “[pjersons not predetermined in number, provided that, where the goods or services are received primarily by members of the institution, membership cannot be predetermined in number and cannot be arbitrarily denied by a vote of the existing members.” Id. The productions are open to all members of the general public. Participation in the dramas are limited to members, but membership is not limited or restricted in any way. Further, inability to pay the membership fee is not an impediment, as fees are often waived.
The entertainment and the educational experiences are available for anyone who seeks to take advantage of the programs. Participation in programs run by RCC are also available to public school students at no charge. A *260 substantial portion of the services provided by RCC is free to anyone who cannot afford the fees. This criterion is met by RCC.
The last criterion is that RCC “relieves the government of some of its burden.” In St. Margaret Seneca Place vs. Board of Property Assessment Appeals and Review, 536 Pa. 478, 487, 640 A.2d, 380, 385 (1994), the Pennsylvania Supreme Court set forth that the “HUP test of whether an institution has relieved the government of some of its burden does not require a finding that the institution is fully funding the care of some people who would otherwise be fully funded by the government. The test is whether the institution bears a substantial burden that would otherwise fall to the government.”
Under Section 375(f) of Act of 55, 10 P.S. § 375(f), “Government Service”, an institution may satisfy the criterion in one (1) of six (6) ways, including if it:
(1) Provides a service to the public that the government would otherwise be obliged to fund orto provide directly or indirectly or to assure that a similar institution exists to provide the service.
(2) Provides services in furtherance of its charitable purpose which are either the responsibility of the government by law or which historically have been assumed or offered or funded by the government.
This criterion is clearly met. The partnership with the school districts provide participation and education in the performance of the theatre arts. This includes instruction in acting, technological assistance, stage and prop building, and playwriting. Unfortunately, schools are no longer able to fund these types of programs themselves in many cases. *261 RCC is clearly filling a void.
RCC also assists other theatre groups by allowing those groups to use its facilities, props, and costumes. If RCC was unable to do this, these other theatre groups would have to find alternatives, which may come at an exorbitant cost.
For the reasons set forth, this court finds that RCC is entitled to an exemption as a purely public charity. Accordingly, this court enters the following order:
ORDER
And now, this 26th day of March 2015, after trial held, the appeal of the Reading Community Club from the decision of the Board of Assessment Appeals of Berks County, Pennsylvania, entered October 8, 2014, is sustained. The Board’s decision, dated October 8,2014, is reversed. The appellant, Reading Community Club, shall be exempt from property tax for the property identified by Parcel Number 11-5317-61-12-1594.