LASH, J.,
The matter before this court is the appeal of appellant, Reading Civic Opera Society, (hereinafter “RCO”), from the decision of the board of assessment appeals of Berks County, Pennsylvania, (hereinafter “board”), denying RCO an exemption from real estate taxation. RCO claims it is entitled to the exemption as a purely public charity. Trial was held on March 23, 2015. This court enters the following findings of fact:
I.FINDINGS OF FACT
1. Appellant is the Reading Civic Opera Society, (hereinafter “RCO”), a non-profit corporation organized under the laws of the Commonwealth of Pennsylvania since 1944.
2. Respondent, board of assessment appeals of Berks County, Pennsylvania, (hereinafter “board”), has offices in the Berks County Services Center, Third Floor, 633 Court Street, Reading, Berks County, Pennsylvania 19601.
3. Intervenor, Reading School District, maintains offices at 800 Washington Street, Reading, Berks County, Pennsylvania 19601. Reading School District filed its notice of intervention on November 14,2014.
*264 4. RCO owns three (3) pieces of real estate, (collectively referred to as “the property”), at the following addresses:
a. 122 North 10th Street, Reading, Berks County, Pennsylvania 19601, (hereinafter referred to as the “Main Building”), .160 acres in size, Property I.D. Number 08-5317-77-01-4079;
b. 129 Moss Street, Reading, Berks County, Pennsylvania 19601, (hereinafter referred to as the “Outbuilding”), .110 acres in size, Property I.D. Number 08-5317-77-01-3059; and
c. 127 Moss Street, Reading, Berks County, Pennsylvania 19601, (hereinafter referred to as the “Parking Lot”), .050 acres in size, Property I.D. Number 08-5317-77-01-3057.
5. The property is located in the Reading School District.
6. RCO does not lease any part of the property or earn any rental income from the same.
7. RCO enjoys federal tax exemption status pursuant to Section 501(c)(3) of the Internal Revenue Code. 26 U.S.C.A. §501(c)(3).
8. The mission statement of RCO appears in its ByLaws in Article I — Section 2, which sets forth:
We believe that theatre should engage everyone in the community to participate as a performer, member of the audience, staff or crew. [RCO] exists to serve the theatrical community and residents of Reading/Berks County and surrounding area by providing quality entertainment that has a broad spectrum of appeal to *265 diverse demographics, as well as championing and promoting the performance arts through education and development of individuals, both on and off the stage.
9. In furtherance of its mission, RCO produces large production musicals, with singing, dancing and acting.
10. The productions do not take place on the property. The Main Building is used for storage, with a small area available for rehearsal space for RCO productions and productions of other theatre groups. The outbuilding is used strictly for storage and is without utilities. The parking lot is used for parking accessibility.
11. RCO receives revenues through membership dues of Twenty Dollars ($20.00), which will be waived if the proposed member cannot afford the fee, private contributions, rental income from school districts using props and scenery for their own productions, fundraising, and ticket income. Tickets are often donated to those who cannot afford to pay the fee.
12. Revenue is used to first pay the overhead, which includes flat fees provided to actors and directors on some occasions. If there is a surplus, the surplus is used for building maintenance purposes. RCO is currently operating at a deficit. The financial position of RCO was described as “grave.”
13. RCO generally provides two (2) to three (3) shows per year, as well as an annual gala event, which features a fundraiser and provides a forum for high school students to compete for scholarships of Seven Hundred Fifty Dollars ($750.00), Five Hundred Dollars ($500.00), and Two Hundred Fifty Dollars ($250.00) toward college tuition or expenses.
*266 14. On or about August 20, 2014, RCO filed an application for real estate tax exemptions for all three (3) properties.
15. On October 1, 2014, the board held a hearing to determine whether RCO should be granted a real estate tax exemption for all three (3) properties.
16. On October 8, 2014, the board mailed RCO final notices indicating that the requested real estate tax exemptions were denied for each property.
17. Thereafter, on or about November 5, 2014, RCO filed a real estate tax exemption appeal to the Court of Common Pleas of Berks County.
II. DISCUSSION
RCO claims that it is a purely public charity under Section 8812(a)(3) of the new Consolidated County Assessment Law, 53 Pa.C.S.A. Section 8812(a)(3), which states the following:
(a) General rule. — The following property shall be exempt from all county, city, borough, town, township, road, poor, county institution district and school real estate taxes:...
(3) All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, including fire and rescue stations, with the grounds annexed and necessary for their occupancy and use, founded, endowed and maintained by public or private charity as long as all of the following apply:
(i) The entire revenue derived by the entity is applied *267 to support the entity and to increase the efficiency and facilities of the entity, the repair and the necessary increase of grounds and buildings of the entity and for no other purpose.
(ii) The property of purely public charities is necessary to and actually used for the principal purposes of the institution and not used in such a manner as to compete with commercial enterprise.
The exemption from taxation for institutions of purely public charity has its foundation in the Pennsylvania Constitution. In Article 8, Section 2(a)(v), it states: “The general assembly may by law exempt from taxation:... (v) Institutions of purely public charity, but in the case of any real property tax exemptions only that portion of real property of such institution which is actually and regularly used for the purposes of the institution.” Const.Art. 8, § 2(a)(v).
In the case of Mesivtah Eitz Chaim of Bobov, Inc. v. Pike County Board of Assessment Appeals, 44 A.3d 3 (Pa. 2012), the Pennsylvania Supreme Court clarified the requirements for an institution seeking a tax exemption as a purely public charity. The court stated that the institution must initially meet the definition of “purely public charity” measured by the test set forth in the case of Hospital Utilization Project v. Commonwealth, 507 Pa. 1, 487 A.2d, 1306, 1317 (1985), a standard commonly referred to as the “HUP test.” That test requires that the institution prove that it: “(a) [a]dvances a charitable purpose; (b) [djonates or renders gratuitously a substantial portion of its services; (c) [bjenefits a substantial and indefinite class of persons who are legitimate subjects of charity; (d) [rjelieves the government of some of its burden; and *268 (e) [ojperates entirely free from private profit motive.” Mesivtah, 44 A.3d at 5.
If the institution meets the HUP test, it may then qualify for exemption if it meets the requirements imposed by the Institutions of Purely Public Charity Act, (hereinafter “Act 55”), 10 P.S. Section 375. Mesivtah, 44 A.3d at 6. The criteria set forth in Act 55, conceptually similar to the HUP test, are: that the institution advances a charitable purpose, that it operate entirely free from private profit motive, that it donates or renders gratuitously a substantial portion of its services, that it benefits a substantial and indefinite class of persons who are legitimate subjects of charity and that it relieves the government of some of its burden. 10 P.S. § 375(b)-(f). The distinctions between the HUP test and Act 55 stem from the different means used to determine whether the various criteria have been met. For the HUP test, the means were established through development of case law while Act 55 is specific, listing the means in the statute.
The board does not dispute that RCO operates entirely free from private profit motive but does argue that RCO fails to meet any of the other four (4) requirements. Accordingly, this court shall first consider whether the RCO advances a charitable purpose.
As stated in the HUP case, the term “charitable” includes:
[Ejvery gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical, or social standpoint. In its broadest meaning, it is understood ‘to refer to something done or given for the *269 benefit of our fellows or the public.’ HUP, 487 A.2d at 1315 (citation omitted.)
RCO provides services to the community which benefit the community and do “advance a charitable purpose.” RCO provides quality, low cost theatre productions, giving the greater Reading community a theatre presence. Individuals have opportunities to participate in the productions as members at little or no cost. RCO assists school districts and other theatre productions by furnishing free or low cost sets, props and costumes. Students interested in theatre are permitted to participate in theatre productions.
Under Sections 375(b)(2) and (6) of Act 55, this criterion is also met for RCO advances and provides for education and accomplishes a purpose which is recognized as important and as beneficial to the public advancing social, moral or physical objectives.
The next prong of the HUP test is whether RCO “donates or renders gratuitously a substantial portion of its services.” In the case of In Re Appeal of Sewickley Valley YMCA, 774 A.2d 1, 8 (Pa. Cmwlth. 2001), the Pennsylvania Commonwealth Court discusses this criterion in the context of the HUP test, setting forth:
In order to satisfy its burden of demonstrating that it donates or renders gratuitously a substantial portion of its services, an entity must show that it makes a bona fide effort to service those persons who are unable to afford the usual fee. Fellowship Int’l Mission v. Lehigh County Bed. of Assessment Appeals, 690 A.2d 1271 (Pa. Cmwlth. 1997). “In other words, it must be shown that it provides services to someone who cannot afford to pay.” Id. at 1274. Whether an institution renders *270 gratuitously a substantial portion of its services should be based on the totality of the circumstances, as the term “substantial” does not imply a magical percentage. HUP [507 Pa. at 19, 487 A.2d at 1315, n. 9.]
According to the testimony, RCO is very liberal in waiving membership fees and providing free tickets to those who cannot afford to purchase tickets. No one is denied access due to an inability to pay. RCO lends props, costumes and sets to school districts and other theater groups, saving them thousands of dollars over the course of time.
Act 55 lists several alternate means of meeting this criterion. Applicable here is Section 375(d)(l)(v), which qualifies an institution if it provides for “uncompensated goods or services which in the aggregate are equal to at least 5% of the intuition’s costs of providing goods or services.” RCO provided a profit and loss statement for the three (3) productions in 2014. The first production, the “100th Year Free Concert”, cost Three Thousand Four Hundred Twenty-Five Dollars ($3,425.00) to produce. While there were no donated tickets, there were 85 volunteer hours compiled at Five Dollars ($5.00) per hour, for a cost of Four Hundred Twenty-Five Dollars ($425.00). The second production, “Shrek”, was produced at a cost of Eighteen Thousand Eight Hundred Twenty Dollars ($18,820.00). There were 60 tickets donated costing One Thousand Five Hundred Dollars ($1,500.00) and 1,344 hours of volunteer services at Five Dollars ($5.00) an hour for a total cost of Six Thousand Seven Hundred Twenty Dollars ($6,720.00). Finally, the last production, “Forbidden Broadway”, cost Eight Thousand Four Hundred Fifty-Five Dollars ($8,455.00) to produce. There were 25 tickets donated at a cost of Six Hundred Twenty-Five Dollars ($625.00) and *271 176 hours for volunteer services at Five Dollars ($5.00) an hour for a total cost of Eight Hundred Eighty Dollars ($880.00). The uncompensated goods and services far exceed the five percent (5%) required by Act 55. This court determines that this prong has been met.
The next prong of the HUP test is that RCO “benefits a substantial and indefinite class of persons who are legitimate subjects of charity.” As stated in the Appeal of Sewickley Valley YMCA, 774 A.2d at 11, “[i]n order to qualify as a substantial and indefinite class of persons, the beneficiary of the charity must be the public.” (citation omitted). As such, restrictions limiting availability of the facilities to a defined group or class could be a basis for disallowance. The Pennsylvania Supreme Court in Unionville-Chadds Ford School District v. Chester County Board of Assessment Appeals, 714 A.2d 397, 401 (Pa. 1998), notes that an essential feature of public charity “is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite or unrestricted quality that gives it its public character,” citingDonohugh’s Appeal, 86 Pa. 306, 313 (1878).
Act 55 defines “legitimate subjects of charity” as “those individuals who are unable to provide themselves with what the institution provides for them.” 10 P.S. Section 375(e)(2). Act 55 defines “substantial and indefinite class of persons” as “[pjersons not predetermined in number, provided that, where the goods or services are received primarily by members of the institution, membership cannot be predetermined in number and cannot be arbitrarily denied by a vote of the existing members.” Id. The productions are open to all members of the general public. Participation in the dramas are limited to members, but membership is not limited or restricted in any way. *272 Further, inability to pay the membership fee is not an impediment, as fees are often waived.
Access to productions and use of props, sets and costumes are available to schools and other theatre groups and agencies who seek to take advantage of the programs. Participation in programs run by RCO are also available to public school students at no charge. RCO provides free tickets to non-profit agencies for use by disadvantaged persons, such as the Olivet’s Boy’s Club/Police Athletic League, and Berks County Women In Crisis, whose programs assists persons who have been subject to domestic violence and abuse. A substantial portion of RCO’s services are free to anyone who cannot afford the fees. This criterion is met by RCO.
The last criterion is that RCO “relieves the government of some of its burden.” In St. Margaret Seneca Place vs. Board of Property Assessment Appeals and Review, 536 Pa. 478, 487, 640 A.2d, 380, 385 (1994), the Pennsylvania Supreme Court set forth that the “HUP test of whether an institution has relieved the government of some of its burden does not require a finding that the institution is fully funding the care of some people who would otherwise be fully funded by the government. The test is whether the institution bears a substantial burden that would otherwise fall to the government.”
Under Section 375(f) of Act of 55, 10 P.S. § 375(f), “government service,” an institution may satisfy the criterion in one (1) of six (6) ways, including if it:
(1) Provides a service to the public that the government would otherwise be obliged to fund or to provide directly or indirectly or to assure that a similar institution exists to provide the service.
*273 (2) Provides services in furtherance of its charitable purpose which are either the responsibility of the government by law or which historically have been assumed or offered or funded by the government.
This criterion is also met. Educational training for school students interested in the theatre arts is provided, reducing the burden on school districts to provide this type of instruction or activity. School districts and other agencies receiving government funding have costs defrayed by the availability of costumes, props and sets, saving thousands of dollars over time. Otherwise, the theatre groups and schools would have to find alternatives, which may come at an exorbitant cost. Tickets are donated to these agencies as well, also helping to alleviate the agency’s burden.
For the reasons set forth, this court finds that RCO is entitled to an exemption as a purely public charity. This court enters the following order:
ORDER
And now, this 31st day of March 2015, after trial held, the appeal of the Reading Civic Opera Society from the decision of the board of assessment appeals of Berks County, Pennsylvania, is sustained. The board’s decision, dated October 8,2014, is reversed. The appellant, Reading Civic Opera Society, shall be exempt from property tax for the following properties:
a. 122 North 10th Street, Reading, Berks County, Pennsylvania 19601, Property I.D. Number 08-5317-77-01-4079;
b. 129 Moss Street, Reading, Berks County, Pennsylvania 19601, Property I.D. Number 08-5317-77-01-3059; and
*274 c. 127 Moss Street, Reading, Berks County, Pennsylvania 19601, Property I.D. Number 08-5317-77-01-3057.