IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pocono Community Theater,       :
                 Appellant     :
                                 :
            v.                :   No. 679 C.D. 2015
                               :   Argued: February 10, 2016
Monroe County Board of       :
Assessment Appeals           :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge


OPINION BY
PRESIDENT JUDGE LEAVITT                FILED: April 20, 2016

        Pocono Community Theater appeals an order of the Court of Common Pleas of Monroe County (trial court) denying its post-trial motion[1] for reconsideration of the court's December 31, 2014, order affirming a decision of the Monroe County Board of Assessment Appeals (County). The County's decision denied the theater's application for real estate tax exemption on the basis that the theater was not an institution of "purely public charity" within the meaning of the Pennsylvania Constitution. The theater contends that the trial court erred. It

---

[1] In *In re Borough of Churchill*, 575 A.2d 550 (Pa. 1990), our Supreme Court held that the trial court has discretion to allow the filing of exceptions in tax assessment matters. This Court has held that where the trial court rules on post-trial motions, that ruling is the order from which the appeal may be taken, regardless of whether the trial court authorized or invited the filing of post-trial motions. *In re Upset Price Tax Sale for Springfield Township*, 700 A.2d 607, 610 (Pa. Cmwlth. 1997).

contends that, because the theater relieves the government of a burden, it satisfied the mandates of the Pennsylvania Constitution. It also argues that it fully satisfies the terms of the Institutions of Purely Public Charity Act (Charity Act), Act of November 26, 1997, P.L. 508, *as amended*, 10 P.S. §§371 – 385. We reverse.

## Background

Pocono Community Theater (Theater) was organized to preserve an historic movie theater in downtown East Stroudsburg, Pennsylvania. As a non-profit Section 501(c)(3) corporation, Theater is exempt from federal and state taxation. Its board of directors serves on a volunteer basis. It employs one person, a general manager. According to its by-laws, Theater's purpose is to "provide independent and art films offering a unique cinematic experience that enlivens the human spirit and promote[s] learning; while promoting local visual artists on the stage and in exhibition." Reproduced Record (R.R.__) at 75. Theater hosts a number of community programs and events, donating marketing and theater space for educational programs. These events include artist receptions, lectures, and programs for members, communication organizations, and students. Theater hosts approximately 100 events per year. Theater also screens first-run studio, independent, and art house films nearly every day.

Ticket sales and contributions constitute Theater's revenue. Contributions come in two forms: outright gifts and "membership" fees. Membership guarantees the member a one-year discount on movie tickets.

In July of 2013, Theater requested an exemption from real estate taxes as a purely public charity, but County denied the request. On April 2, 2014, Theater appealed to the trial court. A hearing was held on September 30, 2014. The trial court heard testimony from Raymond Scheetz, Theater's founder and

2

president; Deborah Boyle, Theater's accountant; and Courtney Tolino, Theater's general manager.

Scheetz testified about some of the events Theater had hosted or sponsored. These include monthly meetings of a Gay and Straight Alliance student group from the local high school; screening a documentary on bullying for local high school students; hosting a latchkey program where children were taught how to write and film screenplays; three symposia on Lyme disease; multiple fundraising events for diabetes research; a program on behalf of the local hospital addressing depression; art exhibits; and film festivals for a local college. Notes of Testimony (N.T.), 9/30/14 at 6. Scheetz explained that Theater was an important part of East Stroudsburg's ten-year plan to improve the city's downtown appeal with enhanced cultural opportunities. N.T. 21.

When questioned whether Theater was in reality primarily engaged in the business of showing movies, Scheetz responded:

> Well, I wouldn't call it the primary activity. If you go to the movies during the week, you may find nobody in the theater or maybe one or two people. It's a law by the film studios. You have to be open 365. It's not by our -- if I had my druthers, I would have the movies only operate a couple days a week and not have it during the week because you are losing money, but the point is that our members that want to see these so-called programs pay memberships to keep the theater open. We cannot survive without our members, but they don't come during the week.

N.T. 25-26. Furthermore, Scheetz explained:

> Ticket sales do not operate the theater. It's the members that keep the theater open for various reasons, and the membership has grown considerably and their interests because of all the programs we're doing including the performance on the stage,

3

the plays, the book readings and so forth that we do. That's what really attracts more and more members.

A lot of the members don't even come to the movies. They support the theater because they want the theater to be there. The studios take a major portion. If you have a large movie, the studios will take 65 percent at times, minimum 50 percent. So if you take the fees for the movies that you are paying out, plus all of the expenses of showing the movies, it's actually a lost cause. The members of the theater keep the theater open, not the ticket sales.

N.T. 26-27.

Scheetz further testified that, even with the gifts and membership sales, Theater was not doing well financially and would not likely be able to pay property taxes in addition to its other expenses. Boyle, Theater's accountant, corroborated Scheetz's testimony. According to Boyle, Theater was barely making ends meet. To support Boyle's testimony, Theater submitted tax returns for fiscal years ending June 30, 2010, 2011, 2012, and 2013. The tax returns relayed the following figures:

|  | 2010 | 2011 | 2012 | 2013 |
|---|---|---|---|---|
| **Ticket Income** | $309,573 | $395,080 | $268,487 | $200,409 |
| **Other Income** | $0 | $7,190 | $84,050 | $68,559 |
| **Membership Sales** | $51,730 | $47,087 | $45,602 | $43,140 |
| **Contributions** | $119,807 | $22,708 | $167,601 | $263,989 |
| **Gross Income** | $481,110 | $472,065 | $565,740 | $576,097 |
| **Expenses** | $431,905 | $500,072 | $488,107 | $474,933 |
| **Net Income** | $49,205 | ($28,007) | $77,633 | $101,164 |

Boyle acknowledged on cross-examination that ticket sales, as well as contributions, are necessary:

4

Well, I mean – you know, let's get basic here. It's a theater. I mean, that's what it does. It runs movies. It wouldn't be that if it didn't run movies. Do you see what I'm saying?

I mean, to say it runs without the movies, no, but, you know, I think if you are asking the question, could they actually get grants and stuff, take away the movies, get grants to do what they are doing and just be a theater? Probably not. I mean, I think, you know, to some extent, the way they are able to do for the community what they do is because they make a buck with the memberships and the box office.

N.T. 75-76. Tolino clarified that any profit made from selling movie tickets is invested in Theater.

On December 31, 2014, the trial court issued an opinion and order denying Theater's appeal from the County's decision. The trial court held that Theater failed to qualify as a "purely public charity" under the Pennsylvania Constitution because it did not relieve the government of a burden. The trial court reasoned:

Although [Theater] has provided educational programs for high school students, [East Stroudsburg University] students, the Stroud Area Regional Police Department and the Pocono Medical Center, these programs are not a significant portion of [Theater's] efforts. Clearly, [Theater] focuses first on its movie theater business and secondly on the use of films and its theaters for general use by non-profit community groups. Supporting local non-profit groups is an honorable undertaking, but it is not relieving the government of its burden in a significant way. The government has no obligation to present entertainment, and it likewise has no obligation to support non-profit fundraising.

Trial court opinion at 12. The trial court explained that because it held that Theater did not satisfy the test set forth in *Hospital Utilization Project v. Commonwealth*, 487 A.2d 1306 (Pa. 1985), it did not have to consider the statutory test for a purely

5

public charity set forth in the Charity Act. Nevertheless, it did so. First, the trial court determined that Theater did not meet its burden of showing its Articles of Incorporation contained a provision ensuring that, upon dissolution of the corporation, any leftover assets would be donated to another charitable cause as required by Section 5(c)(4) of the Charity Act, 10 P.S. §375(c)(4). Second, the trial court found that Theater did not prove that it rendered gratuitously a substantial portion of its services, as required by Section 5(d)(1) of the Charity Act, 10 P.S. §375(d)(1).

Theater filed post-trial motions. Although the County did not respond, the trial court denied the motions. Theater's appeal to this Court followed.

## Issues

On appeal,[2] Theater contends that the trial court erred by its narrow understanding of what kind of activity relieves the government of a burden. Theater argues that the trial court's narrow understanding conflicts with the Pennsylvania Supreme Court's instruction on the types of activities that can relieve the government of a burden for purposes of the "purely public charity" tax exemption in the Pennsylvania Constitution. Theater also argues that the trial court

---

[2] Our scope of review in real estate tax exemption appeals considers whether the trial court abused its direction or committed an error of law and whether the trial court's findings are supported by substantial evidence. *Camp Hachshara Moshava of New York v. Wayne County Board for the Assessment and Revision of Taxes*, 47 A.3d 1271, 1274 n.5 (Pa. Cmwlth. 2012). Whether the evidence supports the conclusion that Theater relieves the government of a burden is a legal question over which our scope of review is plenary and our standard of review is *de novo*. *Feldman v. Hoffman*, 107 A.3d 821, 826 n.7 (Pa. Cmwlth. 2014).

erred in concluding that Theater did not satisfy Section 5(c)(4) and (d)(1) of the Charity Act's tax exemption criteria.[3]

**Analysis**

The Pennsylvania Constitution authorizes the General Assembly to exempt from taxation "[i]nstitutions of purely public charity." PA. CONST. art. VIII, §2(a)(v). However, our Constitution does not define that term. For this reason, the Pennsylvania Supreme Court established a five-prong test to determine whether an institution qualifies as a purely public charity in *Hospital Utilization Project,* 487 A.2d 1306. This test is commonly referred to as the "*HUP* test."

"By satisfying the [*HUP*] test, an entity shows that it [merely] meets the minimum constitutional requirements to be eligible for a tax exemption." *Camp Hachshara Moshava*, 47 A.3d at 1275. The entity "must then also show that it meets the statutory requirements of Section 5 of the Charity Act to qualify for a tax exemption. *Fayette Resources, Inc. v. Fayette County Board of Assessment*, 107 A.3d 839, 845 (Pa. Cmwlth. 2014), *petition for allowance of appeal denied*, 125 A.3d 778 (Pa. 2015). The burden is on the entity seeking the tax exemption. *Camp Hachshara Moshava*, 47 A.3d at 1275.

Under the *HUP* test, an entity qualifies as an institution of purely public charity when it:

    (a) Advances a charitable purpose;

---

[3] Theater also contends that the trial court denied Theater equal protection under the 14th Amendment of the United States Constitution because similar theaters in nearby counties have been given tax exempt treatment. This issue was raised for the first time in Theater's Motion for Post-Trial Relief. As such, the trial court did not have an opportunity to develop a factual record to decide this claim. Therefore, the trial court did not err in dismissing Theater's equal protection claim.

(b)   Donates or renders gratuitously a substantial portion of its services;

(c)   Benefits a substantial and indefinite class of persons who are legitimate subjects of charity;

(d)   *Relieves the government of some of its burden*; and

(e)   Operates entirely free from private profit motive.

*Id*. (quoting *Hospital Utilization Project*, 487 A.2d at 1317) (emphasis added). The fourth prong of the *HUP* test is the only one at issue in the matter *sub judice*. In asserting that it relieves the government of a burden, Theater relies principally on *Unionville-Chadds Ford School District v. Chester County Board of Assessment Appeals*, 714 A.2d 397 (Pa. 1988).

At issue in *Unionville-Chadds Ford* was a real estate tax exemption granted to Longwood Gardens, a world-renowned public garden and arboretum.  In addition to providing public gardens, Longwood Gardens features "architectural displays, a water garden, fountains, an open air theater for the performing arts, managed meadow and forest lands, wetlands, wildlife habitats, walking trails, picnic areas, and a variety of education and research facilities."  *Id*. at 398. Additionally, Longwood Gardens hosts hundreds of cultural events each year as well as a variety of workshops and lectures.  Longwood Gardens offers both gardens and services to the community.

A local school district challenged Longwood Gardens' tax exemption on the basis that Longwood Gardens did not relieve the government of an obligation.  The Pennsylvania Supreme Court disagreed.  It wrote:

> The government has routinely assumed a responsibility for providing open space for public recreation and for conservation of natural landscapes and resources, as well as for providing cultural assets.  The Commonwealth has, in fact, established a

8

> wide-ranging assortment of parks, recreation areas, and cultural facilities throughout the state.
>
> ***
>
> In short, the government has long provided support for public parks and recreation areas *as well as for cultural institutions*, including museums, libraries, etc. Longwood's public park and cultural facilities fall clearly within the scope of burdens that are routinely shouldered by government. Hence, this element of the *HUP* test was properly found to be met.

*Id*. at 401 (emphasis added). Accordingly, the Supreme Court upheld Longwood Gardens' tax exemption.

County argues that *Unionville-Chadds Ford* is distinguishable because Longwood Gardens is unique in that it enjoys an international reputation and provides services well beyond the means of the locality where it is situated. Theater, on the other hand, provides laudable, but ultimately ordinary services. This is evidenced by the fact that other movie theaters can provide Theater's offerings should it cease operation. By contrast, were Longwood Gardens to close its doors, no other institution could carry on its mission or legacy. Because Longwood Gardens' impact on the community is so meaningful and significant, it relieves the government of some of its burden to provide educational and recreational opportunities. Theater's services pale in comparison to those provided by Longwood Gardens. We disagree with County's argument that *Unionville-Chadds Ford* was limited to institutions offering cultural and recreational opportunities on the scale of Longwood Gardens.

It may be true, as the trial court found, that Theater does not provide a statutorily or constitutionally mandated governmental function. However, we agree with Theater that the trial court interpreted the fourth prong of the *HUP* test too narrowly. As does Longwood Gardens, Theater supports and advances causes

9

that the government has chosen to support. For instance, the record shows that Theater permits performing arts groups and art exhibits to use its facility for free, activities for which the government has assumed responsibility. The General Assembly has established the Pennsylvania Council on the Arts, which is a state agency whose mission is to "foster the excellence, diversity, and vitality of the arts in Pennsylvania and to broaden the availability and appreciation of those arts throughout the state."[4] Local government has also undertaken the responsibility to support the arts. East Stroudsburg has adopted a ten-year plan to expand support for the performing arts and to enhance the city's cultural appeal. The city had no obligation to do so. Theater's efforts to provide a venue for musical and theatrical performances, as well as community events and art programs, furthers the government's assumed responsibility to support the arts while advancing historic preservation. Screening films, whether first-run or "art" films, is a cultural activity, which is why museums of every type also screen films.

In sum, *Unionville-Chadds Ford* is dispositive. Theater is the type of "cultural facility" targeted by our Supreme Court in *Unionville-Chadds Ford,* 714 A.2d at 401. Theater provides benefits to causes that the government supports and advances even though it is not obligated to do so. Accordingly, we hold that Theater relieves the government of a burden for purposes of the *HUP* test.

### Section 5 of the Charity Act

After it concluded that Theater was not a "purely public charity" under the *HUP* test, the trial court then decided that Theater also did not qualify for

---

[4] http://www.arts.pa.gov/WHO%20WE%20ARE/AGENCY%20OVERVIEW/Pages/default. aspx#.VssVyDYo6fA (last visited 3/18/2016).

an exemption under the Charity Act. It concluded that Theater did not prove that, upon dissolution, its assets would be donated to a charity or that it renders a substantial portion of its services gratuitously. Theater challenges both conclusions as inconsistent with the uncontradicted evidence. County responds that once the trial court determined that Theater did not qualify as a "purely public charity" under the *HUP* test, its analysis should have ended. *Mesivtah Eitz Chaim of BoBov, Inc. v. Pike County Board of Assessment Appeals*, 44 A.3d 3, 9 (Pa. 2012) (holding that "if you do not qualify under the *HUP* test, you never get to the statute."). County argues that this Court should remand Theater's second appeal issue to the trial court.[5]

We agree with County that the trial court did not need to address the question of Theater's qualification under the Charity Act once it ruled against Theater on the *HUP* test. However, it chose to do so. Accordingly, we will decide the merits of Theater's argument that the trial court erred in holding that Theater does not qualify for a tax exemption under Sections 5(c)(4) and (d)(1) of the Charity Act.

Section 5(c)(4) of the Charity Act requires that "[t]he governing body of the institution of purely public charity [adopt] as part of its articles of incorporation or, if unincorporated, other governing legal documents a provision that expressly prohibits the use of any surplus funds for private inurement to any person in the event of a sale or dissolution of the institution of purely public charity." 10 P.S. §375(c)(4). The trial court held that because Theater did not

---

[5] County also argues that a remand is necessary for more evidence. However, all that is needed to resolve the trial court's conclusion is Theater's tax returns and 501(c)(3) letter from the IRS. 26 U.S.C. §501(c)(3). Those documents were submitted into evidence before the trial court. Therefore, remand is not warranted.

offer its articles of incorporation into evidence, Theater did not meet its burden under Section 5(c)(4).[6]  Theater counters that its documented exemption from federal income tax establishes that in the event of a dissolution Theater's assets will be transferred to another charity.

To obtain an exemption from federal income tax under 26 U.S.C. §501(c)(3), a charity must provide the federal government evidence that

> upon dissolution, [its] assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal Government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized.

26 C.F.R. §1.501(c)(3)-1(b)(4).  Furthermore, an entity does not qualify for a 501(c)(3) exemption "if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders."  *Id*.  In short, Theater's Favorable Determination Letter from the IRS exempting Theater from federal income tax under 26 U.S.C. §501(c)(3) demonstrates compliance with Section 5(c)(4) of the Charity Act.  *See* Theater's Exhibit 7.

Next, the trial court concluded that Theater did not satisfy Section 5(d)(1) of the Charity Act, which states that an "institution must donate or render gratuitously a substantial portion of its services."  10 P.S. §375(d)(1).  Section 5(d)(1) identifies various ways an institution can demonstrate compliance.  The

---

[6] The articles of incorporation of Theater, and of any Pennsylvania corporation, are public records available from the Department of State.  They can be accessed by visiting www.corporations.pa.gov and paying a fee of $9.00.

12

trial court considered only whether Theater complied with Section 5(d)(1)(i) and (ii).[7] Theater contends that the trial court erred in not considering whether Theater qualified under Section 5(d)(1)(v).

---

[7] These sections provide that an institution can show that it donates a substantial portion of its services when it provides:

(i) Goods or services to all who seek them without regard to their ability to pay for what they receive if all of the following apply:

(A) The institution has a written policy to this effect.

(B) The institution has published this policy in a reasonable manner.

(C) The institution provides uncompensated goods or services at least equal to 75% of the institution's net operating income but not less than 3% of the institution's total operating expenses.

(ii) Goods or services for fees that are based upon the recipient's ability to pay for them if all of the following apply:

(A) The institution can demonstrate that it has implemented a written policy and a written schedule of fees based on individual or family income. An institution will meet the requirement of this clause if the institution consistently applies a formula to all individuals requesting consideration of reduced fees which is in part based on individual or family income.

(B) At least 20% of the individuals receiving goods or services from the institution pay no fee or a fee which is lower than the cost of the goods or services provided by the institution.

(C) At least 10% of the individuals receiving goods or services from the institution receive a reduction in fees of at least 10% of the cost of the goods or services provided to them.

(D) No individuals receiving goods or services from the institution pay a fee which is equal to or greater than the cost of the goods or services provided to them, or the goods or services provided to the individuals described in clause (B) are comparable in quality and quantity to the goods or services provided to those individuals who pay a fee which is equal to or greater than the cost of the goods or services provided to them.

10 P.S. §375(d).

13

Section 5(d)(1)(v) states that an institution "render[s] gratuitously a substantial portion of its services" if "[u]ncompensated goods or services ... in the aggregate are equal to at least 5% of the institution's costs of providing goods or services." 10 P.S. §375(d)(1)(v). Theater argues that it easily meets this test because its expenses vastly exceed its income. County disagrees, contending that Theater operated at a loss in only one year from 2010 to 2013.

Section 5(d) of the Charity Act defines "uncompensated goods or services" as "[t]he full cost of all goods or services provided by the institution for which the institution has not received monetary compensation or *the difference between the full cost and any lesser fee received* for the goods or services, including the cost of the goods or services provided to individuals unable to pay." 10 P.S. §375(d)(4)(i) (emphasis added). Thus, in order to determine whether the value of uncompensated goods or services rises to the level of at least 5% of the institution's cost, we need to determine the difference between Theater's full cost of providing services and the total fees it has received.

In 2010, Theater had a total of $309,573 in income from ticket sales and other sources. Its expenses for providing all of its services totaled $431,905.[8] The difference between Theater's income and expenses results in a deficit of $122,332. As such, the only way Theater was able to have net income at the end

---

[8] County asserts that the expenses of playing movies should not be counted in its total expenses for uncompensated goods or services because, assuming *arguendo* that Theater offers some charitable services, its movie screenings are separate from these other endeavors. We disagree. Theater is not in the business of showing blockbusters every week. Rather, Theater shows an eclectic selection of independent and art films that further Theater's mission to provide cultural services and promote the arts. Therefore, a line cannot be drawn between Theater's "cultural events" and its movie offerings. Movies are cultural. This is why they are often shown in museums.

of the year was through contributions and membership sales, which are a type of charitable donation and not a fee. Because 5% of $431,905 is $21,595.25, Theater was uncompensated for more than 5% of its goods and services. We need not go through every year because the results are the same: more than 5% of Theater's expenses were uncompensated. For this reason, Theater rendered gratuitously a substantial portion of its services as required by Section 5(d)(1)(v) of the Charity Act.[9]

In sum, the trial court erred in holding that Theater did not satisfy Section 5(c)(4) and (d)(1) of the Charity Act.

**Conclusion**

The trial court erred in holding that Theater did not relieve the government of a burden as required by the *HUP* test. Furthermore, the trial court erred in concluding that Theater did not meet the definition of an institution of purely public charity under Section 5(c)(4) and (d)(1)(v) of the Charity Act. For these reasons, the order of the trial court is reversed.

_____
MARY HANNAH LEAVITT, President Judge

Judges Cohn Jubelirer, Brobson and McCullough dissent.

---

[9] Because we conclude that Theater qualifies as providing a community service under Section 5(d)(1)(v), we need not consider whether Theater qualifies under Sections 5(d)(1)(i), (ii), or (iv).

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pocono Community Theater,       :
                Appellant       :
                            :
           v.            :    No. 679 C.D. 2015
                            :
Monroe County Board of      :
Assessment Appeals         :

## **O R D E R**

AND NOW, this 20th day of April, 2016, the order of the Court of Common Pleas of Monroe County dated April 7, 2015, in the above-captioned matter is hereby REVERSED.

_____
MARY HANNAH LEAVITT, President Judge